## PROCTOR & GAMBLE DISTRIBUTING CO. *v.* NEW ALBANY WHOLESALE GROCERY CO.

[95 South. 440. No. 23104.]

SALES. *Evidence held sufficient to support judgment for seller of goods destroyed in possession of buyer while agreement to return on offer of seller not consummated.*

Where a manufacturer had sold goods to a jobber, and on account of a change in selling policy had offered to take back the goods if the jobber desired to return them, but the goods were destroyed by fire while in the possession of the jobber, *held,* in a suit for the purchase price of the goods, that the evidence clearly established the fact that at the time the goods were destroyed this offer of the seller had not been accepted and no agreement for the return of the goods had been consummated, and that the plaintiff was entitled to a directed verdict for the purchase price of the goods destroyed.

APPEAL from circuit court of Union county.

HON. W. A. ROANE, Judge.

Suit by the Proctor & Gamble Distributing Company against the New Albany Wholesale Grocery Company. From a judgment for defendant, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

*B. N. Knox,* for appellant.

There is nothing in the proof to show that the goods at the time of the fire, were the property of appellant, and being held by appellee, as bailee. Clearly, the court should have granted the peremptory instruction asked for by the appellant. In the letter above referred to, Exhibit A, appellees clearly show that they did not recognize any authority of salesman Dunn to bind his principal. In order to constitute a bailment, there are two things, at least, necessary. First, there must be a delivery actual or constructive, and, second, there must be an acceptance. But before either a delivery or acceptance, there must be

a contract entered into constituting a bailment. 6 Corpus Juris, pp. 1102-3, 4 and 5.

In the case at bar, appellees had bought the goods outright, the title to the property was in them. Then before any bailment could have been made it would have been necessary that the title thereto should revert to appellants before they could have entered into a contract of bailment. Appellant had refused to accept the goods, and before anything was done in the matter, the goods were destroyed by fire. From the proof in this case, these identical goods were insured by appellees and after the fire appellees collected the money from the insurance companies on this identical property, as their property.

In the trial below, after the court had overruled appellant's motion for a directed verdict, appellant made another motion for directed verdict as to that amount collected by appellees from insurance companies covering the goods in question. This was overruled. Then the court granted appellees an instruction, stating, in effect, that this was not a suit to collect the insurance money. The instruction was misleading to the jury, and should not have been granted.

If appellees, under their contention of being bailees, had not insured this property, after insuring their own they would have been guilty of ordinary negligence, and would still have been liable to appellant for the amount sued for. 6 Corpus Juris, page 1113. There must be a delivery and an acceptance. 6 Corpus Juris, p. 1102-3-4. The relation of bailor and bailee can only arise by contract—the contract relates to the time of the delivery of the article loaned to the borrower, and there is no liability upon either party before. 4 Elliot on Contracts, page 269, par. 2023. In the case of a constructive delivery, where pledges already have possession of chattels, a pledge contract is necessary to operate as a constructive transfer. 4 Elliot on Contracts page 281, par. 3037.

In order for a contract to exist, there must have been an agreement reached between two or more parties, where

they are of the same mind and intention concerning the subject-matter, which can be ascertained only by outward expressions, excluding all questions of intention unexpressed. Lawson on Contracts page 13. And on page 14 of the same authority, we find that the parties must communicate to one another their common intention. Every agreement must necessarily result from an officer or proposal on one side and acceptance on the other. Lawson on Contracts, page 17.

In the case at bar, appellee made a proposal for appellant to accept the goods, but appellant did not accept the proposition. This same authority holds that the acceptance must be absolute and identical with the terms of the offer. There was no contract between the parties in case at bar, and consequently, there could be no bailment.

The trial court should not have allowed this case to go to the jury, but should have sustained appellant's motion for a directed verdict. But, after overruling this motion, the court again erred in refusing the instructions 2 and 5 on behalf of appellant. It is the contention of appellant that the appellee failed to show that a contract of bailment was entered into between the parties hereto, or that the goods in question ever reverted to appellant, and the only thing shown by appellee is an offer, attempting to enter into an agreement with appellant and, before it could reach the agreement state, the subject-matter was destroyed by fire. If there was no agreement, there was no contract, and this being the sole question at issue, I respectfully submit that this court should reverse the decision of the lower court, and enter judgment here in favor of appellant for the amount sued for, with interest.

*Stephens & Stephens,* for appellee.

It is argued that because, in answer to Craig's letter, appellant asked that the matter be held up until Mr. Oakes could come out to see about the matter. Doubtless appellant was anxious to make some arrangement by which ap-

pellee might keep the soap. But that does not affect the matter. The real question is, had appellant given notice already that the goods would be taken back, and had appellee agreed that they might be taken back?

We would answer the question affirmatively. The notice had been given by appellant and received by appellee, the goods had been set aside and instructions given that they were not to be sold, the salesman had been sent to check the goods and had done so. Nothing remained except to ship them back when proper shipping instructions were received. Before the letter with reference to Oakes' coming was received appellee's warehouse at Pontotoc burned and the goods were destroyed. Appellee refused to pay for them. If they were being held for appellant and were destroyed without fault of appellee, of course they should not be paid for.

There is no contention that the loss of the goods was due to any negligence or carelessness on the part of appellee or any of its employees. The fire originated some distance away and spread to its house. It is a well-recognized principle that appellee is not to be held to that high degree of responsibility which makes them insurers against loss or damage. 49 Miss. 343.

It is true that appellee carried some insurance on its own goods, but its loss was very heavy, more than twenty thousand dollars. Counsel for appellant argues that it should share in the insurance money. We know of no law that warrants this. We earnestly insist that the testimony shows that these goods were being held for appellant; that their loss was not due to any negligence of appellee, and that the verdict of the jury is in accord with the facts and the law.

Cook, J., delivered the opinion of the court.

The appellant, Proctor & Gamble Distributing Company, instituted this suit against the New Albany Wholesale Grocery Company, appellee, for the balance of the pur-

chase price of a car of soap previously sold to appellee, and from a judgment in favor of appellee, defendant, this appeal was prosecuted.

To the appellant's declaration, the appellee filed its plea of the general issue, and gave notice that it would offer evidence to prove the following facts:

"Defendant gives notice that on the trial of this cause that it will offer to prove that at the time of the purchase of the goods mentioned in the account on file, it was fully understood and agreed between plaintiff and defendant that plaintiff would aid in the sale of the said goods in the territory covered by defendant, and in which it sold goods. That it was the custom of plaintiff to have its salesmen do this character of work. That defendant would not have purchased said goods, but for said agreement and custom.

"That thereafter plaintiff changed its custom in that regard, and issued notice by circular letter to jobbers of its change of custom in this regard. That plaintiff failed to give any aid in the sale of and distribution of said goods. That plaintiff, because of this change of custom, agreed to take back the goods, and that said goods were destroyed by fire without fault of the defendant, while they were being held by it at plaintiff's request awaiting orders for disposition of the same."

It appears from the testimony that at the time the car of soap was sold to appellee, and for a long time prior thereto, it had been the custom of appellant to send its salesmen into the territory served by the jobber handling its products for the purpose of aiding the jobbers in selling the goods purchased from it; that the appellee had previously handled goods purchased from appellant, and was familiar with this custom of appellant; that appellant's salesman who sold the car of soap promised appellee that he would assist them in disposing of the soap; that during the month of June, 1920, the appellant decided to change this method of doing business, and it gave notice to the jobbers and retailers that, effective July 1, 1920, it would sell direct to the retail trade instead of through the jobbers;

that this necessarily put appellant in competition with the jobbers who had products on hand which had been purchased from appellant; that at that time appellee had not sold any of the car of soap purchased from appellant; that when this car of soap was received at New Albany, Miss., a portion of it was unloaded at appellee's warehouse at that point, and the balance shipped to its store in Pontotoc, Miss.; that these goods remained stored in its storehouse in Pontotoc until the morning of August 3, 1920, when the storehouse and all its contents were destroyed by fire.

C. N. Craig, appellee's general manager, testified that he received notification of this change of policy on the part of appellant, and that he received a circular letter from appellant to the effect that its products then in the hands of the jobbers should be held awaiting instructions from it, and that it would take the goods off the jobbers' hands; that this letter was not answered, and later Mr. Dunn, appellant's traveling salesman, checked the goods on hand in their store and called his attention to the matter. suggesting that it ought to be settled and that appellant would take the goods back, and that on July 28, 1920, he wrote the appellant the following letter:

"We are advised by your Mr. Dunn that it will be satisfactory for us to return to you all your brands of soap which we have in stock at this place and at Pontotoc, Miss., due to your going direct to the retail trade.

"Before shipping this back to you, however, we should like to have your written authority to do so and we will appreciate your immediate reply with authority to return this soap to you."

On August 2, 1920, appellant replied to this letter, but before this reply reached appellee, the goods were destroyed by fire; this letter to appellee being as follows:

"We have in our possesion your letter of July 28th requesting disposition on your stock of Proctor & Gamble products. We shall be very glad to adjust this matter with you, but before any action is taken along this line we ask your indulgence for another week or ten days at least,

until we can have our Mr. J. B. Oaks interview you and arrange for disposition.

"Assuring you of our hearty co-operation, we remain," etc.

It further appears from the testimony that on July 26, 1921, the appellant drew a sight draft on appellee for the purchase price of the car of soap, but this draft was returned unpaid; that appellant, through its representatives, endeavored to induce the jobbers to keep the goods which they had on hand when appellant's selling policy was changed, but when unable to reach a satisfactory adjustment, it took the unsold goods back; that it took back the greater part of the goods which appellee had purchased from it and which had been stored at New Albany. It further appeared without dispute that F. K. Dunn, appellant's traveling salesman, only had authority to solicit orders for goods and transmit them to appellant for approval.

At the conclusion of the testimony, the appellant requested a peremptory instruction to the jury to find for the appellant, plaintiff, for the reason that the defendant had failed to show that the title to the goods in controversy, after they became the property of the defendant, ever reverted back to the plaintiff.

We think this instruction should have been granted. There was a consummated sale of the goods, and according to the version of appellee's own witnesses as to the contents of the letter which they claimed to have received from appellant, it amounted to no more than an offer to accept the return of the goods. This offer was not accepted, and we think the evidence, and especially appellee's letter of July 28th, and appellant's reply of August 2d, clearly shows that negotiations for the return of the goods were still pending at the time of the fire, and since no agreement had been reached between the parties, this unfortunate loss must be borne by the one that owned the goods when they were destroyed.

131 Miss.—19

The judgment of the court below will therefore be reversed, and judgment entered here for appellant.

Reversed, and judgment here for appellant.

*Reversed.*